**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.  SECURITIES AND EXCHANGE COMMISSION, :<br><br>                    Plaintiff, :<br><br>vs. :<br><br>1.  GARY NAVARRO, :<br><br>                    Defendant. : | Civil Action No.<br>4:10-CV-189-CVE-FHM |

**COMPLAINT**

The United States Securities and Exchange Commission files this Complaint against Defendant Gary Navarro ("Navarro" or "Defendant") and would respectfully show the Court as follows:

**I.    Summary**

1.     This case involves insider trading by Navarro in the securities of SemGroup Energy Partners, LP ("SGLP"), a Tulsa, Oklahoma-based petroleum transportation and storage company.

2.     At the time of Navarro's trading: he was a crude oil purchasing manager at SemCrude, LP ("SemCrude"); SemCrude and SGLP were affiliates and were subsidiaries of SemGroup, LP ("SemGroup"); SemGroup was SGLP's largest source of revenue; and SGLP's common units, representing limited partnership interests, traded on the Nasdaq Stock Market.

3.     Between July 8, 2008 and July 13, 2008, through his employment at SemCrude, Navarro learned that SemGroup was having serious liquidity issues.  Knowing this confidential

information, on July 14, 2008, Navarro liquidated his SGLP position—selling 5,400 SGLP units at an average sale price of approximately $23.78 per unit, for total sale proceeds of $128,442.41.

4. On July 17, 2008, after the close of trading, SGLP publicly announced that SemGroup was "experiencing liquidity issues" and was considering bankruptcy. The next day, SGLP's unit price closed at $8.30 per unit, 65% lower than Navarro's average sale price.

5. By selling his SGLP holdings on July 14, Navarro avoided trading losses of $83,602.

6. By reason of these activities, Defendant violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder. The Commission, in the interest of protecting the public from any further fraudulent activity, brings this action against Defendant seeking permanent injunctive relief, disgorgement of illicit profits (losses avoided) and accrued prejudgment interest, and civil monetary penalties.

## II. Jurisdiction

7. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. The Commission seeks the imposition of civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

8. This Court has jurisdiction over this action pursuant to Sections 21(d), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1 and 78aa]. Defendant, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this Complaint.

9. Venue is proper because transactions, acts, practices and courses of business described below occurred within the jurisdiction of the Northern District of Oklahoma.

### III. Defendant

10. **Gary Navarro**, age 58, resides in Wichita, Kansas. During the relevant time, Navarro was SemCrude's crude oil purchasing manager.

### IV. Statement of Facts

#### A. Navarro Learns Material Nonpublic Information

11. Through his employment at SemCrude, on or about July 8, 2008, Navarro learned that SemCrude and SemGroup had serious liquidity issues. In particular, he was told by a SemGroup executive that SemGroup was attempting to raise capital by various means, including bringing in a new partner, selling assets, and other avenues.

12. By the morning of July 11, 2008, Navarro knew that SemGroup's commodity trading activities had generated negative trading positions of up to $2 billion, for which SemGroup could not close. In an internal email to a SemCrude colleague, Navarro noted that "the real problem with [the negative trading positions of up to $2 billion] is back to the way out…if we are 80% trading profits vs. 20% fee based…and our trading positions are in a spiraling death…we're cooked."

13. On Sunday, July 13, 2008, Navarro was informed by a high-level SGLP executive that SemGroup was in a very bad financial situation. The executive noted that he wasn't sure what they were going to do, but that management was trying to figure it out now. The executive summoned Navarro to Tulsa to help figure out what to do next.

#### B. Navarro Liquidates His SGLP Holdings

14. While driving to Tulsa on July 14, 2008, at approximately 11:21 am, Navarro used his cell phone to call the Tulsa office of his broker where he held his SGLP units and placed

an order to sell 5,400 SGLP units. Navarro's order was fully executed within approximately an hour.

15. Navarro generated total sale proceeds of $128,422.41 by selling 5,400 SGLP units at an average sale price of approximately $23.78. On July 17, after the close of trading, SGLP announced that SemGroup was "experiencing liquidity issues and is exploring various alternatives, including raising additional equity, debt capital or the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code."

16. On July 18, SGLP's unit price closed at $8.30 per share, 65% lower than Navarro's average sale price. By liquidating his position on July 14, Navarro avoided losses of $83,602.

### C. Navarro Violated SemGroup's Polices Regarding the Use of Confidential Company Information

17. As a SemCrude employee, Navarro was required to comply with SemGroup's policy and procedure manual. SemGroup's policy and procedure manual states that "each Employee is prohibited from disclosing, directly or indirectly, to any unauthorized person, business or other entity, or using, for the Employee's own purposes, any confidential information."

18. The manual states that "confidential information" includes, among other things: business and proprietary information; company financial information; information regarding costs, profits, markets, market studies and forecasts; other business affairs and methods; customer lists and customer prospects; prospects and opportunities; substance of agreements with customers and others; pending projects and proposals; and any and all information concerning operational details and business plans.

19. Navarro received the manual and agreed to adhere to it. Nevertheless, Navarro used confidential company information for his own purposes when, based on that information, he sold his SGLP securities.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder

20. Plaintiff Commission repeats and incorporates by reference paragraphs 1 through 19 of this Complaint as if set forth verbatim herein.

21. Defendant, as an employee of SemCrude, owed a duty of trust and confidence to SemCrude and SemGroup. As a result, Defendant had a duty not use confidential corporate information for his personal benefit.

22. In breach of this duty, Defendant sold all of his SGLP units on the basis of material nonpublic information obtained from SemCrude and SemGroup. Defendant knew or was severely reckless in not knowing that the information in his possession was material and nonpublic and that his trading on the basis of the information was improper and in breach of his duty.

23. By reason of the foregoing, Defendant violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(i)   permanently enjoin Defendant from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

(ii) order Defendant to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] for his violations of the federal securities laws as alleged herein;

(iii) order Defendant to disgorge all ill-gotten gains from the conduct alleged herein, with prejudgment interest; and

(vi) grant such other relief as this Court may deem just and appropriate

DATED: March 30, 2010        Respectfully submitted,

*s/ Robert Long*
ROBERT LONG
Attorney for Plaintiff
Arizona Bar No. 019180
U.S. Securities and Exchange Commission
801 Cherry Street, 19th Floor
Fort Worth, TX 76102-6882
(817) 978-6477
(817) 978-4927 (*fax*)

Of Counsel:
ROBERT C. HANNAN
Texas Bar No. 08924700
U.S. Securities and Exchange Commission
801 Cherry Street, 19th Floor
Fort Worth, TX 76102-6882